IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TOMMY LEE MOSLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 313-086 |
| | ) | |
| JASON MEDLIN, Warden, and | ) | |
| JERRY SIKES, Facility Investigator, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Autry State Prison in Pelham, Georgia, filed a complaint pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Before the Court are Plaintiff's motion for summary judgment and Defendants' amended motion for summary judgment. (Doc. nos. 41, 52.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 41), Defendants' motion for summary judgment be **DENIED AS MOOT** (doc. no. 47), Defendants' amended motion for summary judgment be **GRANTED** (doc. no. 52), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

**I. COMPLAINT ALLEGATIONS**

Because Plaintiff failed to present any admissible evidence at summary judgment, it is necessary to give context by summarizing the pertinent complaint allegations. In his

complaint, Plaintiff alleges that on April 16, 2012, at approximately 5:20 a.m., he was sexually assaulted in his cell by Inmate George Hardy. (Id. at 5.) Plaintiff allegedly reported the assault to the "PREA Hotline" three times, and reported the assault within the prison to a floor officer at 6:15 a.m., and to the head counselor, Mr. Richardson, whom Plaintiff did not named as a defendant, at 12:30 p.m. (Id.) Plaintiff was then taken from his dorm and placed in a shower for two hours. (Id.) Plaintiff asked to be brought to medical at this time because he "had suffered some anal contusion [sic] in the assault," but Officer Ricks, whom Plaintiff did not name as a defendant, denied his request "with very derrogatory [sic] statements." (Id.) He was then placed in segregation with another inmate and Officer Ricks denied his requests for two statement forms, two medical requests, two inmate requests, and two grievances. (Id. at 6.)

A week later, Defendant Jerry Sikes, the onsite investigator, purportedly met with Plaintiff in segregation. According to the complaint, Plaintiff was "totally ignored" and Defendant Sikes "instead made reference and accusation to [his] sexual preference" and told Plaintiff that his reporting of the allegations were "foolish" and "just chain-gang." (Id.) Plaintiff was then allegedly reprimanded and "threatened with indefinite lock-down." (Id.) Defendant Sikes purportedly told Plaintiff he was sent by Defendant Jason Medlin, the warden at WCF, to stop Plaintiff's calls to the Department of Corrections. (Id.) Plaintiff contends that he requested medical attention from Defendant Sikes, who told Plaintiff to "fill out a sick call." (Id. at 6-7.) Plaintiff states he remained in segregation for approximately five-and-a-half to six weeks with no medical treatment or further interviews regarding his allegations. (Id. at 7.) While in segregation at WCF, Plaintiff allegedly had to defend

2

himself against another assault by another inmate, who was not supposed to be in Plaintiff's cell by protocol. (Id. at 12.)

Plaintiff claims he was denied use of the phones to call the "PREA Hotline" after his initial meeting with Defendant Sikes, but he was able to place three calls through the hotline before this meeting, as noted above. (Id. at 9.) Defendant Medlin purportedly told Defendant McLinn "that under no circumstances" was Plaintiff to be allowed to use the phones unless it had "gone through" Defendant Sikes. (Id. at 9.)

Plaintiff allegedly met with Defendant Medlin on May 8, 2012, the day before the prison was audited, and he told Defendant Medlin that he had been sexually assaulted, had not been given proper medical attention, and the situation had not been handled according to protocol. (Id. at 9-10.) According to the complaint, Plaintiff showed Defendant Medlin several letters from Inmate Hardy admitting to the assault and asking Plaintiff not to pursue charges against him. (Id. at 8, 10.) Defendant Medlin, as well as three other unit managers, allegedly confirmed that Inmate Hardy wrote the letters "by handwriting analysis." (Id. at 8, 10.) Defendant Medlin purportedly determined that Inmate Hardy was guilty of Plaintiff's alleged sexual assault, but Hardy was allowed to "go free back into population" while Plaintiff was kept in segregation. (Id. at 10.)

Plaintiff first states these letters from Inmate Hardy were never part of the investigation of his allegations and never given to PREA Coordinator Karen Jeff, whom Plaintiff did not name as a defendant. (Id.) But then in direct contrast, he also states the letters were, in fact, made a part of the investigation which culminated in a final report concluding that video footage did not substantiate Plaintiff's allegations. (Id.) Plaintiff

3

alleges these letters, and the purported verification that Inmate Hardy is the author, prove that the investigation had been "fabricated" to cover up the incident, "avoid a visit from internal affairs" and cover up the staff's violation of "protocol, the law, and [Plaintiff's] rights to due process and equal protection." (Id. at 9.)

In August 2012, PREA Coordinator Jeff filed a report with the Ombudsman Unit of Internal Affairs for the Georgia Department of Corrections that contained Plaintiff's allegations and the investigation's findings, which Plaintiff says are "false." (Id. at 10-11.)

Plaintiff was "placed on immediate transfer" to a "disciplinary facility" in retaliation for his "repeated and determined efforts to have justice done." (Id.) He was then transferred and given medical treatment for injuries that had mostly healed by then. (Id. at 11.) He was then transferred to a third facility for the "mental health condition derived from the . . . failed protection of law enforcement." (Id. at 11-12.) Plaintiff is under heavy medication currently and undergoes counseling at his new facility. (Id. at 12.)

## II. PROCEDURAL BACKGROUND

By Order dated July 7, 2014, United States District Judge Dudley H. Bowen, Jr., dismissed Plaintiff's (1) deliberate indifference claim based on failure to protect from an alleged sexual assault and attempted sexual assault by other prisoners, (2) deliberate indifference claim based on lack of treatment for alleged "anal contusions," (3) claims against several prison officials and Inmate Hardy, (4) due process claims based on failure to comply with grievance procedures or Prison Rape Elimination Act ("PREA") protocol, (5) conspiracy claims based on an alleged cover-up of a purported sexual assault, and (6) claims for monetary damages against Defendants in their official capacities. (Doc. no. 15.)

4

However, Judge Bowen also found that Plaintiff had arguably stated viable First Amendment retaliation claims against Defendants Jason Medlin and Jerry Sikes. (See doc. no. 11, pp. 5-6.) In particular, Plaintiff alleges that he was placed in segregation for five and a half to six weeks after Defendant Sikes threatened Plaintiff with "indefinite lockdown" if Plaintiff continued to report his allegations of sexual assault and that Plaintiff was transferred to "a disciplinary facility" after meeting with Defendant Medlin about his allegations. (Id.)

Defendants then filed a Motion in Limine, seeking to prohibit Plaintiff from mentioning or claiming damages other than nominal damages at trial in prosecuting his First Amendment retaliation claims because he had not pled and could not prove any physical injury from the alleged retaliation. (Doc. no. 17.) On October 21, 2014, the undersigned granted the motion, finding that Plaintiff had not alleged he suffered any physical injury as a result of the retaliatory acts that comprised the only remaining claims. (See doc. no. 29.) Accordingly, Plaintiff was not entitled to recover damages other than nominal damages. (Id.) On January 7, 2015, on *de novo* review of the October 21st Order, Judge Bowen adopted the undersigned's order as a recommendation and found that Plaintiff's claims for compensatory and punitive damages were "barred by his failure to plead that either Defendant Sikes' or Defendant Medlin's retaliatory conduct caused or exacerbated a physical injury greater than *de minimis*." (See doc. no. 40.) Additionally, because Plaintiff continued to "harp" on alleged due process violations and deliberate indifference claims in his objections and motion for reconsideration, Judge Bowen reminded Plaintiff that these claims were properly dismissed for failure to state a claim. (See id. at 7, n.4.)

5

Plaintiff then moved for summary judgment, to which Defendants responded and filed their own motion for summary judgment. (See doc. nos. 41, 47.) Defendants inadvertently did not attach an exhibit to their first motion for summary judgement. (See doc. no. 47.) This Court ordered Defendants to submit an amended motion, with the missing exhibit attached, so that the Court could fully consider the issues. (Doc. nos. 51, 52.) Plaintiff also filed a "Declaration for Entry of Default," asserting that Defendants are barred from combining their response to Plaintiff's motion for summary judgment with their motion for summary judgment. (Doc. no. 50.)

## III. SUMMARY JUDGMENT FACTS

Before describing the summary judgment record, it is important to note that where Plaintiff has failed to properly dispute a material fact in Defendants' statement, the Court has deemed that fact undisputed pursuant to Fed. R. Civ. P. 56(e) and Williams v. Slack, 438 F. App'x 848, 849 (11th Cir. 2011). Plaintiff has failed to present any evidence to support his allegations, and his lengthy summary judgment submissions contain nothing but diatribes that are unsworn and inadmissible. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001); see also Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment").

By sworn declarations dated February 3 and 4, 2015, respectively, Defendants Sikes and Medlin described the investigation into Plaintiff's allegations of sexual assault and his subsequent transfer from WCF. (Decl. Sikes; Decl. Medlin.) Plaintiff was transferred to WCF on April 13, 2012. (Decl. Medlin ¶ 4.) Three days after his arrival, Plaintiff claims to have been sexually assaulted by another inmate on April 16, 2012. (Decl. Medlin ¶ 4; Decl. Sikes ¶ 5.) Applicable prison policy, CCA Policy 14-02, Sexual Abuse Prevention and Response, provided for segregation of Plaintiff pending inquiry. (Decl. Sikes ¶ 5; Decl. Medlin ¶ 5.) Plaintiff was therefore assigned to segregation not as a form of punishment, but instead as a precautionary matter for his own protection and safety, pursuant to CCA Policy 14-02, pending the initial investigation. (Decl. Sikes ¶ 5; Decl. Medlin ¶ 7.)

Under CCA Policy 14-02, if an initial examination of the facts supports the claim, the inmate is medically examined and a more detailed investigation is conducted. (Decl. Sikes ¶ 5; Decl. Medlin ¶ 5.) Defendant Sikes, as the facility investigator, was assigned to the preliminary inquiry. (Decl. Sikes ¶ 5; Decl. Medlin ¶ 5.) Defendant Sikes reviewed the video of Plaintiff's unit and found that the video was not consistent with Plaintiff's report that another inmate entered his cell at approximately 5:20 a.m. and assaulted him. (Decl. Sikes ¶ 5; doc. no. 1, p. 5.) Based on this review, Defendant Sikes concluded in his preliminary inquiry that Plaintiff's claims were unsubstantiated. (Decl. Sikes ¶ 5.) Plaintiff had previously made similar false reports of sexual assault at the prison where he was incarcerated before WCF. (Id. at ¶ 3.) Defendant Sikes subsequently spoke with Plaintiff and his conclusion remained the same. (Id. at ¶ 5.) Defendant Sikes terminated the investigation and cleared Plaintiff to return to general population. (Id.) Defendant Medlin

relied on Defendant Sikes's report and had no further involvement in the investigation. (Decl. Medlin ¶ 5.) Defendant Sikes also had no further involvement with Plaintiff after he told him of the findings of his preliminary investigation. (Decl. Sikes ¶ 5.)

When Plaintiff was cleared to return to general population, he refused to leave segregation and asked to be transferred, although he never requested protective custody. (Decl. Medlin ¶ 7; doc. no. 1, p. 7.) The Department of Corrections was notified and reassigned Plaintiff elsewhere as part of routine population redistribution. (Decl. Medlin ¶ 7.) Defendant Medlin lacked the authority to transfer Plaintiff since transfers are controlled by the Georgia Department of Corrections. (Id. at ¶¶ 4, 7.) Facilities can and do request inmates be considered for transfer but the decision to relocate is controlled solely by the Georgia Department of Corrections. (Id.) The segregation status to which Plaintiff was briefly assigned until transfer was non-punitive segregation, which means he was in a locked cell but was allowed shower, exercise, and other privileges. (Id. at ¶ 8.) This segregation status is substantially similar to all general population inmates but for freedom of movement. (Id.) However, even most of the cell house units have their cell doors locked during the day and evening but for inmate movements. (Id.)

Plaintiff asserts that he met with Defendant Medlin and showed him several letters from Inmate Hardy admitting to the assault. (Doc. no. 1, pp. 8, 10.) Plaintiff also asserts that Defendant Medlin verified the confession letters by handwriting analysis. (Id.) Defendant Medlin denies that he ever met with Plaintiff, saw these letters, or confirmed their veracity. (Decl. Medlin ¶ 6.) Plaintiff submitted to the Court the letters from Inmate Hardy, and in them the author denies the assault allegation. (Doc. no. 39-1, pp. 28-30.)

Defendant Medlin states that Plaintiff was assigned to segregation for his own protection and as a matter of routine, not to punish him for complaining about sexual assault. (Decl. Medlin ¶ 7.) Defendant Medlin further explains that Plaintiff's transfer to another facility occurred because Plaintiff refused to leave segregation, not as punishment for Plaintiff's sexual assault allegations. (Id.) Likewise, Defendant Sikes states that he had no role in the decision to relocate Plaintiff to another facility. (Decl. Sikes ¶ 4.) Instead, Defendant Sikes's only duties in the matter were to investigate Plaintiff's allegation and no action Defendant Sikes took, or did not take, was intended to punish Plaintiff for his reports. (Id.)

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). If the burden of proof at trial rests with the movant, to prevail at summary judgment, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at summary judgment either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is no more than a request for reconsideration of the Court's prior ruling on two issues. First, despite Judge Bowen's dismissal of Plaintiff's claims alleging due process violations and deliberate indifference, Plaintiff continues to assert vigorously that the investigation into his sexual assault allegations violated due process because it did not comply with prison policy and Defendants were deliberately indifferent to his medical needs. (See doc. nos. 15, 40, 41, 46, 49, 50.) Second, Plaintiff continues to assert that he is not restricted to nominal damages on his retaliation claims because the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, does not apply to First Amendment retaliation claims. (See doc. nos. 41, 46, 49.) For the reasons stated in the Court's prior Orders, Plaintiff's arguments for reconsideration are denied. (See doc. nos. doc. nos. 15, 29, 40.)

Plaintiff also argues that he is entitled to default judgment on his motion for summary judgment because Defendants filed their response to his motion with their own motion for summary judgment. (See doc. no. 50.) The argument is meritless. (See doc. no. 52.)

For all these reasons, the Court **DENIES** Plaintiff's motion for summary judgment, which is more accurately described as a motion for reconsideration. (Doc. no. 41.)

### C. Defendants' Motion for Summary Judgment

"To prevail on a retaliation claim, the inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech . . . .'" O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). Here, the undisputed facts show that Plaintiff cannot satisfy any of the prima facie elements of a First Amendment retaliation claim against either Defendant.

First, Plaintiff's speech was not constitutionally protected. Plaintiff did not have a First Amendment right to report his allegation of sexual assault because it is undisputed that the report was false. (Decl. Sikes ¶ 5.) Plaintiff reported that the assault occurred at 5:20 a.m. when the assailant, Inmate Hardy, entered his cell. (Doc. no. 1, p. 5.) It is undisputed, however, that video surveillance of Plaintiff's unit shows that no one entered Plaintiff's cell that morning. (Decl. Sikes ¶ 5.) Based on his review of the surveillance video, Defendant Sikes properly found that Plaintiff report was falsely made. (Id.) It is also undisputed that Plaintiff had previously made similar false reports of sexual assault at the prison where he was incarcerated before WCF. (Id. at ¶ 3.) Plaintiff's false report of sexual assault is not

11

constitutionally protected. See, e.g., Robinson v. Boyd, 276 F. App'x 909, 910 (11th Cir. 2008) (inmate who asked officer about wearing warm clothing did not have a First Amendment right to argue with the officer after being given direct instruction that the clothing was not permitted); Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008) (inmate's "false and insubordinate remarks," which violated legitimate prison regulations, were not constitutionally protected).

Plaintiff asserts, without the benefit of evidence or affidavits, that he met with and showed Defendant Medlin several letters from Inmate Hardy admitting to the assault. (Doc. no. 49.) However, the sworn affidavit testimony of Defendant Medlin is that he never met with Plaintiff, saw these letters, or confirmed their veracity. (Decl. Medlin ¶ 6.) Just as importantly, the letters touted by Plaintiff as clear admissions by Inmate Hardy are clearly not. Indeed, the letters are ambiguous, imply a consensual sexual relationship, contain a clear denial of the assault allegation, and accuse Plaintiff of making false allegations of assault. (See doc. no. 39-1, pp. 28-30.)

As to the second element, Plaintiff did not suffer an adverse action as a result of his sexual assault allegation that would likely deter a person of ordinary firmness from engaging in such speech. Plaintiff has not refuted Defendants' sworn affidavit testimony that (1) Plaintiff was placed in segregation for his own protection and safety pursuant to CCA Policy 14-02 pending Defendant Sikes's investigation into Plaintiff's sexual assault allegations; (2) Plaintiff refused to leave segregation and asked to be transferred when Defendant Sikes told him the investigation was closed and he could return to general population; and (3) the Department of Corrections transferred Plaintiff as part of routine population redistribution

because Plaintiff would not leave segregation. (Decl. Medlin ¶¶ 4, 7; Decl. Sikes ¶¶ 3-5.) Being placed in segregation for protection while officials investigate claims of sexual assault would not deter a person of ordinary firmness from reporting a sexual assault. This is especially true here because the segregation status to which Plaintiff was briefly assigned until transfer was non-punitive segregation, which means he was in a locked cell but was otherwise allowed shower, exercise, and other privileges. (Decl. Medlin ¶ 8.) Defendant Medlin's unrefuted, sworn declaration is that this segregation status is substantially similar to all general population inmates but for freedom of movement. (Id.) Indeed, even most of the cell house units have their cell doors locked during the day and evening but for inmate movements. (Id.) Moreover, the segregation assignment could not have been too bad of an experience because it is undisputed that Plaintiff refused to leave segregation. (Decl. Medlin ¶ 7; Decl. Sikes ¶ 5.)

Third, there is no causal relationship between Plaintiff's allegation of sexual assault and the actions he alleges to be retaliatory. It is undisputed that Plaintiff (1) was placed in segregation pursuant to CCA Policy 14-02 for his own protection pending Defendant Sikes's investigation, (2) remained in segregation because he refused to leave when Defendant Sikes closed his investigation, and (3) was transferred by the Department of Corrections as part of routine population redistribution because he refused to leave segregation. (Decl. Medlin ¶¶ 4, 7; Decl. Sikes ¶¶ 3-5.) Nor has Plaintiff refuted Defendant Medlin's sworn affidavit testimony that he did not transfer Plaintiff, nor did he have the authority to do so, which lay solely with the Georgia Department of Corrections. (Decl. Medlin ¶ 4.) Also undisputed is the testimony of both Defendants that they never undertook any action with the intent to

13

punish Plaintiff for his reports of sexual assault.  (Id. at ¶ 7; Decl. Sikes ¶ 4.)

Thus, when drawing all justifiable inferences in Plaintiff's favor, no genuine issue of material fact remains as to Plaintiff's First Amendment retaliation claims against Defendants Sikes and Medlin, and they are entitled to summary judgment.

## V. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 41), , Defendants' motion for summary judgment be **DENIED AS MOOT** (doc. no. 47), Defendants' amended motion for summary judgment be **GRANTED** (doc. no. 52), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of May, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA